# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

BONNIE JEAN GANN,

          Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant.

No. C14-4026-MWB

**REPORT
AND RECOMMENDATION**

---

      Plaintiff Bonnie Jean Gann seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Gann contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

## I. BACKGROUND

      Gann was born in 1980 and has a high school diploma. AR 42-44. She has past relevant work as certified nursing assistant, laborer, bus person, housekeeper, fast food worker and newspaper carrier. AR 278. She applied for SSI on March 31, 2011. AR 156-64. Her application was denied initially and on reconsideration. AR 83-90, 96-106. Gann then requested a hearing before an Administrative Law Judge (ALJ) and on November 20, 2012, ALJ James D. Goodman held a hearing during which Gann testified. AR 32-65. At the conclusion of the hearing, the ALJ left the record open to allow Gann

to submit additional evidence. AR 12. The ALJ also directed written interrogatories to Jim van Eck, a vocational expert (VE). *Id.* The VE submitted answers to the interrogatories on December 10, 2012. AR 278-79. The ALJ then forwarded those answers to Gann's counsel and invited a response. AR 280. Gann's counsel submitted a written response on January 25, 2013. AR 282-83.

On February 7, 2013, the ALJ issued a decision finding Gann was not disabled since March 31, 2011, the date her application was filed. AR 12-25. Gann sought review of this decision by the Appeals Council, which denied review on January 24, 2014. AR 1-6. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. § 416.1481.

On March 26, 2014, Gann filed a complaint (Doc. No. 3) in this court seeking review of the Commissioner's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that

the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. ALJ'S FINDINGS

The ALJ made the following findings:

(1) The record contains no evidence that the claimant engaged in substantial gainful activity since March 31, 2011, the application date (*see*, e.g. Exhibit 3D) (20 CFR 416.971 *et seq.*).

(2) The claimant has the following severe impairments: obesity (Exhibit 9F, p.4), post-traumatic stress disorder (Exhibit 8F, p.6; Exhibit 32F, p.6); bipolar I disorder (Exhibit 1F, p.3; Exhibit 8F, p.6; Exhibit 32F, p.6), attention deficit hyperactivity disorder (ADHD) (Exhibit 8F, p.6; Exhibit 32F, p.6), borderline personality disorder (Exhibit 8F, p.6; Exhibit 32F, p.6), and antisocial personality disorder (Exhibit 8F, p.6) (20 CFR 416.920(c)).

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for up to six hours, and sit for up to six hours, cumulatively. She may alternate her position every two hours. She may climb, balance, kneel, handle, and grip frequently. The claimant may frequently bend, crouch, and crawl, but she may never climb ladders, ropes, or scaffolds. In addition, the claimant may have occasional contact with co-workers and supervisors. The claimant also may undertake

work at a stress level of five on a scale of one to 10, one being, by example, the work of a night dishwasher, and 10 being the work of an air traffic controller (as these occupations are generally performed in the national economy).

(5)   The claimant is capable of performing past relevant work as a Certified Nursing Assistant, Laborer, Bus Person, Housekeeper, Fast Food Worker, and Newspaper Carrier. This work does not requires the performance of work-related activities precluded by the claimants residual functional capacity (20 CFR 416.965).

(6)   The claimant has not been under a "disability," as defined in the Social Security Act, since March 31, 2011, the date the application was filed (20 CFR 416.920(g)).

AR 14-25.

## IV.   THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the

evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

# V. DISCUSSION

Gann raises the following arguments in contending that the ALJ's decision is not supported by substantial evidence:

(1)    The ALJ erred in finding that Gann's migraine headaches and fibromyalgia were not severe impairments.

(2)    The ALJ's determination of Gann's RFC, along with the hypothetical questions he submitted to the VE, are not supported by substantial evidence on the record as a whole.

(3)    The ALJ erred by discrediting Gann's subjective allegations.

I will address these arguments separately.

## A.    Migraine Headaches and Fibromyalgia

### 1.    Applicable Standards

At Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, it is not severe. *Page*, 484 F.3d at 1043.

It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

"Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708 (internal citation omitted). When a claimant has multiple impairments, "the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

In determining the severity of a medically determinable impairment, the ALJ must consider a claimant's symptom-related limitations and make a credibility finding on his or her alleged limitations. *See Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001) (the ALJ erred at Step Two by failing to evaluate the claimant's subjective complaints); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996). While the ALJ may conclude that the medical evidence does not support a claimant's subjective allegations, this is only one factor that should be considered. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) ("The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints."). The ALJ is required to explicitly discredit a claimant and provide reasons. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("[A]n ALJ who rejects such [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints").

### 2. *The ALJ's Findings*

The ALJ discussed migraine headaches only briefly, noting that Gann has a history of suffering from them but finding that there is nothing in the record to indicate that they have any effect on her functioning. AR 15. With regard to fibromyalgia, the ALJ referenced a consultative examination conducted in June 2011 by Douglas W. Martin, M.D. AR 15 (citing AR 439-45). The ALJ noted that Dr. Martin found Gann to be positive for pain at all 18 tender points used to assess fibromyalgia. *Id.* (citing AR 441). However, the ALJ also pointed out that according to Dr. Martin, Gann "complained of

significant pain" every place he touched Gann. *Id.* The ALJ also stated that another consultative examiner had questioned the credibility of Gann's pain response during a prior examination. *Id.* (citing AR 293). That examiner had rather bluntly referred to Gann as an "expert manipulator" who appeared to have studied for the consultative examination. AR 293. Finally, the ALJ referenced Gann's treatment records from 2011 and 2012 and found they do not support Gann's claim that fibromyalgia is a severe impairment. AR 15.

### 3.   *Analysis*

Gann disputes the ALJ's finding that there is nothing in the record to indicate that migraine headaches or fibromyalgia have any effect on her ability to function. Gann cites treatment records from 2011 and 2012 which indicate that she received treatment for these conditions. Doc. No. 12 at 9-10; Doc. No. 16 at 2-3. Gann also relies on her own testimony that she suffers from migraines "a lot." Doc. No. 12 at 9. The Commissioner argues that the ALJ's finding is correct because while the record reflects that Gann sometimes sought treatment for migraines and fibromyalgia, Gann did not attempt to show that these conditions significantly impair her ability to perform work functions. Doc. No. 13 at 6-8.

The Commissioner has the better argument. Simply pointing to instances in which Gann was treated for migraines and fibromyalgia, or stating that migraines occurred "a lot," does not demonstrate that these conditions significantly limited Gann's physical or mental ability to do basic work activities. Moreover, while the ALJ did not undertake an express credibility analysis at Step Two, he did so later in his decision and provided several reasons for concluding that Gann's subjective allegations are exaggerated. AR 23-24. As I will discuss further, *infra,* I find that the ALJ's credibility assessment is supported by substantial evidence on the record as a whole.

In short, the ALJ (a) correctly concluded that the medical evidence did not demonstrate that migraine headaches and fibromyalgia significantly limited Gann's ability to perform work activities and (b) properly discredited Gann's subjective allegations about those impairments. As such, the ALJ did not err at Step Two by concluding that migraine headaches and fibromyalgia are not severe impairments.

## B.    *The RFC and Hypothetical Questions*

### 1.    *Applicable Standards*

#### a.    *The RFC Determination*

At Step Four, the claimant has the burden to prove his or her RFC. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must determine RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (citing *Page*, 484 F.3d at 1043). RFC is a medical question, meaning the ALJ's assessment must be supported by "some medical evidence" of the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government if they are inconsistent with the record as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

#### b.    *Hypothetical Questions to the VE*

As noted earlier, the question at Step Four is whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Because the claimant bears the burden of proof on this issue, VE testimony is not required. *Lewis*,

353 F.3d at 648.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled and the analysis does not proceed to Step Five.  20 C.F.R. § 416.920(a)(4)(iv).

If the analysis reaches Step Five, the Commissioner ordinarily can rely on the testimony of a VE to show the claimant can perform other work.  20 C.F.R. § 416.966(e); *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008).  Such testimony "constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments."  *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010).  The hypothetical question must include "those impairments that the ALJ finds are substantially supported by the record as a whole."  *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).  "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when '[t]here is no medical evidence that those conditions impose any restrictions on [the claimant's] functional capabilities.'"  *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (quoting *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994)).  Thus, to obtain valid VE testimony about a claimant's ability to perform other work, the hypothetical questions posed to the VE should mirror the limitations described in a properly-formulated RFC.

### 2.    *The Parties' Arguments*

Gann raises two primary issues.  First, she argues that the ALJ's findings about her mental RFC improperly contradicted certain of his other findings.  Specifically, she points out that in the process of determining whether her mental impairments met or medically equaled the "paragraph B" criteria of listings 12.02, 12.04, 12.06 and 12.08, the ALJ found that she had marked difficulties with regard to concentration, persistence or pace.  Gann also notes the ALJ afforded great weight to the opinion of Denise Marandola, Ph.D., a consultative examiner, and that her opinion included findings that Gann has poor memory, was highly volatile and could not handle money.  AR 20, 436.

12

Gann contends that the ALJ erred by not incorporating these mental limitations into the RFC.

Second, Gann argues that these alleged omissions in the RFC infected the hypothetical written questions posed to the VE after the hearing, as those questions did not include proven mental impairments. She contends that when her then-counsel[1] brought this issue to the ALJ's attention, the ALJ should have conducted another hearing to allow cross-examination of the VE. In any event, Gann argues that the VE's testimony cannot constitute substantial evidence because the hypothetical questions were flawed.

With regard to Gann's first argument, the Commissioner denies that any actual inconsistencies exist. As for the ALJ's Step Three[2] finding that Gann had marked difficulties with regard to concentration, persistence or pace, the Commissioner notes that the Step Three analysis differs from the RFC analysis. Indeed, the Commissioner appears to argue that findings made at Step Three are not relevant to the formulation of a claimant's RFC. The Commissioner also argues that the ALJ did, in any event, account for those marked limitations in the RFC.

As for Dr. Marandola's opinion, the Commissioner contends that even upon affording it great weight, the ALJ was not required to reflexively adopt it in its entirety. Instead, the Commissioner contends that the ALJ correctly weighed that opinion against other evidence of record and explained how he reconciled inconsistencies. In short, the Commissioner argues that the ALJ's determination of Gann's RFC is supported by substantial evidence, notwithstanding any alleged inconsistencies.

---

[1] Gann's counsel of record in this case was not the attorney who represented her during the ALJ's proceedings.

[2] Both parties refer to this as a Step Two finding. Doc. No. 13 at 8-9; Doc. No. 16 at 3-4. The ALJ made the finding at Step Three, when considering whether Gann has a listed impairment. AR 16-18.

In response to Gann's second argument, the Commissioner points out Gann's arguments are not material because VE opinion evidence is not necessary at Step Four. The Commissioner also denies that the ALJ committed procedural error in failing to conduct another hearing after the VE submitted answers to the post-hearing interrogatories. The Commission argues that such a hearing was not required and, in any event, that Gann failed to request it.

### 3. Analysis

#### a. The RFC Determination

I will first address Gann's arguments that the ALJ's assessment of her RFC is flawed because it is inconsistent with (a) his own Step Three findings and (b) Dr. Marandola's opinion. I will then discuss the ultimate question of whether the RFC, as formulated by the ALJ, is supported by substantial evidence on the record as a whole.

#### i. The Step Three Findings

In considering whether Gann has a listed mental impairment, the ALJ found that she had marked difficulties with regard to concentration, persistence or pace and explained that a "marked" limitation means "more than moderate but less than extreme." AR 17. The ALJ also stated that the "Paragraph B" mental assessment findings are limited to the ratings at Steps Two and Three of the sequential evaluation process and are not part of the RFC assessment. AR 18. Gann alleges that this creates an internal inconsistency in the ALJ's analysis and contends that when a marked limitation is found at Step Two or Step Three, that limitation must be accounted for in the RFC. Doc. No. 12 at 3-4. Gann cites no authority for this proposition.

Meanwhile, the Commissioner cites only one authority to argue that "Paragraph B" findings are "limited to" Step Two and Step Three and are not part of the RFC assessment. Doc. No. 13 at 9 (citing SSR 96-8p, 1996 WL 374184, at *2). The specified page of the referenced ruling includes only a general discussion of the RFC assessment.

It does not state that findings made at Step Two or Step Three are irrelevant to the RFC determination. Indeed, the following instruction appears later in the ruling:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5. Thus, to the extent the Commission argues that Step Two or Step Three findings are entirely irrelevant to the RFC determination, I reject that argument. A claimant's marked limitations do not magically disappear when the analysis moves to Step Four. All limitations, even non-severe ones, must be considered during the RFC assessment.

I likewise reject Gann's apparent argument that a marked limitation found at Step Two or Step Three must be reflected in the RFC. The RFC is not simply a laundry list of impairments and limitations. Instead, it is an explanation of "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). Thus, for example, a finding of a severe impairment at Step Two does not automatically require that the ALJ include corresponding functional limitations at Step Four. *See e.g., Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (quoting *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532 (D. Md. Jan. 31, 2012) ("It is possible, therefore, for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no

substantial evidence that the condition actually limits the claimant's ability to work.")
(citing cases).

In short, impairments found at Step Two or Step Three, whether severe or not, should be considered while formulating the RFC but do not automatically translate into limitations on the claimant's ability to work. Thus, the RFC in this case is not flawed simply because it does not reflexively recite the ALJ's prior finding that Gann had marked difficulties with regard to concentration, persistence or pace. Instead, the RFC must be reviewed in light of the entire record, as discussed further in Section B(3)(a)(iii), *infra*.

### ii.    *Dr. Marandola's Opinion*

Gann also argues that the RFC is defective because the ALJ afforded great weight to Dr. Marandola's opinion but did not include all aspects of that opinion in the RFC. Doc. No. 12 at 11-12; Doc. No. 16 at 4-5. In particular, she points to Dr. Marandola's findings that she had poor memory, was highly volatile and could not handle money, AR 436, and argues that the ALJ failed to include these limitations in the RFC. Again, however, this argument misses the point. Giving great weight to a medical opinion does not mean that the entire opinion must be incorporated into the RFC. "Great weight" does not equate to the "controlling weight" that must be afforded to certain opinions of a treating physician, which means the ALJ must defer to that physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 416.927(c)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005).

When no medical opinion is entitled to controlling weight, the ALJ must formulate a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." *Jones*, 619 F.3d at 971. Here, the ALJ determined that Dr. Marandola's opinion was entitled to more weight than other opinions in the record, including opinions

16

provided by another consultative examiner and a state agency consultant. AR 21. That does not mean, however, that the ALJ was required to incorporate each and every aspect of that opinion into the RFC. Again, the RFC must be reviewed in light of the entire record, not simply in comparison to Dr. Marandola's opinion.

### iii.    *Substantial Evidence*

As noted above, the Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey,* 433 F.3d at 577. If the evidence is such that the decision falls within the so-called "zone of choice," then it must be affirmed regardless of whether the reviewing court would have reached the same conclusion. *Hacker v. Barnhart,* 459 F.3d 934, 936 (8th Cir. 2006). Here, I find that the ALJ's formulation of Gann's RFC meets this standard. The ALJ provided a lengthy explanation, with precise citations to the record, for each component of the physical RFC and mental RFC. AR 18-24.

With regard to his physical RFC findings, the ALJ discussed Gann's treatment records and explained how those records support a conclusion that she can perform work at the medium exertional level. AR 18-19. He further noted that he had taken Gann's obesity into account, as required, and found that no evidence suggested additional physical limitations relating to obesity. AR 19. The ALJ then addressed the opinion evidence of record concerning Gann's physical impairments and provided good reasons for the weight given to all such evidence. AR 19. Having carefully reviewed the record, I conclude that the ALJ's physical RFC findings are supported by substantial evidence.[3]

As for Gann's mental RFC, the ALJ provided an overview of Gann's treatment records and explained why he considered them to be consistent with his RFC findings. AR 20-21. He also set forth a detailed analysis of the medical opinions concerning Gann's

---

[3] Apart from incorporating her contention that the ALJ should have found migraine headaches and fibromyalgia to be severe impairments, Gann did not attempt to develop any specific arguments concerning the ALJ's physical RFC findings. Doc. No. 12 at 14.

mental impairments, including Dr. Marandola's, and offered reasons for the weight afforded to each.  AR 20-22.  In affording Dr. Marandola's opinion great weight, the ALJ explained that the RFC restricts Gann to only occasional contact with co-workers and supervisors because of that opinion.  AR 20.  The ALJ then discussed the other opinions of record and explained how the opinion of another consultative examiner, Michael Baker, Ph.D., also supports the limitations incorporated into Gann's RFC.  AR 21.

While the ALJ's mental RFC discussion does not specifically discuss his Step Three finding that Gann has marked difficulties with regard to concentration, persistence or pace, he did include a restriction on Gann's ability to tolerate stress.  AR 18. Specifically, he found that she could work at a stress level of no more than five on a scale of one to ten.  *Id.*  This restriction is consistent with the Step Three finding and further demonstrates that the ALJ properly considered the entire record in formulating Gann's mental RFC.

Finally, the ALJ undertook a lengthy analysis of Gann's credibility and explained why he discredited her subjective allegations of disabling symptoms.  AR 22-24.  As I will explain in Section V(3)(B), *infra*, the ALJ's credibility findings are supported by substantial evidence.  Thus, I find that the ALJ properly considered all evidence of record, gave good reasons for the weight given to the various medical opinions and formulated an RFC that falls squarely within the permissible "zone of choice."

### b.      *The Questions to the VE*

My conclusion that the ALJ's formulation of Gann's RFC is supported by substantial evidence largely answers her arguments concerning the VE's (written) testimony.  Gann acknowledges that the hypothetical questions the ALJ posed to the VE were based on the ALJ's RFC findings.  Doc. No. 12 at 10-11 (citing AR 274).  Because the RFC was proper, hypothetical questions based on that RFC properly addressed "those

18

impairments that the ALJ finds are substantially supported by the record as a whole." *Pickney*, 96 F.3d at 296.

In answering the ALJ's hypothetical questions, the VE reported that an individual with Gann's vocational profile and RFC could perform all of Gann's past relevant work, including certified nursing assistant, laborer, bus person, housekeeper, fast food worker and newspaper carrier. AR 278-79. Because this testimony was in response to properly-formed hypothetical questions, it constitutes substantial evidence supporting the ALJ's finding that Gann is able to perform past relevant work. *Hulsey*, 622 F.3d at 922.[4]

This leaves for discussion Gann's objection to the process by which the ALJ obtained the VE's opinions after the hearing. She relies on *Wallace v. Bowen*, 869 F.2d 187 (3d. Cir. 1989),[5] for the proposition that the ALJ should have conducted a new hearing because the VE's opinion was obtained post-hearing, thus depriving her counsel of the opportunity for cross-examination. *Wallace* holds that when an ALJ

> chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case, and must reopen the hearing for that purpose if requested.

*Id*. at 193. In *Wallace*, the claimant's attorney made various written objections to the use of post-hearing reports, including the observation that he had not had "the opportunity to confront these physicians and challenge their conclusions." *Id*. at 194. The ALJ nonetheless relied on the post-hearing reports without providing an opportunity for cross-

---

[4] In addition, and as noted above, the Commissioner is correct that VE testimony was not necessary at Step Four, as it was Gann's burden to prove that she was unable to perform past relevant work. *Lewis,* 353 F.3d at 648.

[5] Bizarrely, both parties cited *Wallace* as a decision of the Eighth Circuit Court of Appeals, thus suggesting it to be binding authority. Doc. No. 12 at 14; Doc. No. 13 at 11. It isn't.

examination. *Id.* Under these circumstances, the Third Circuit Court of Appeals held that remand was necessary to permit cross-examination. *Id.*

The Eighth Circuit Court of Appeals addressed *Wallace* in *Coffin v. Sullivan*, 895 F.2d 1206 (8th Cir. 1990), a case neither party cited. The court stated, in relevant part:

> In the case before us, the report was issued post-hearing, and the vocational expert who prepared the report did not examine Coffin. The practice of allowing post-hearing reports is not uncommon. The ALJ frequently will not close the record after the hearing either to order a post-hearing examination of the claimant or to allow the claimant to introduce post-hearing evidence in support of his claim. *See Wallace v. Bowen*, 869 F.2d 187, 191–92 (3d Cir.1988); *Hudson v. Heckler*, 755 F.2d 781, 783 (11th Cir. 1985), *cert. granted*, *Bowen v. Hudson*, 488 U.S. 980, 109 S.Ct. 527, 102 L.Ed.2d 559 (1988), *aff'd on other grounds, Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Further, this circuit affirmed the decision of an ALJ who created hypothetical claimants, relied on the reports of vocational experts, and submitted post-hearing interrogatories. See *Buckler v. Bowen*, 860 F.2d 308, 310–11 (8th Cir. 1988). Thus, we do not find that the factual distinctions of whether the reports were issued before or after the hearing, or whether the claimant was examined by the reporting expert, to be crucial to our decision. Rather, the proper focus in this case is on the requirements of due process, and whether the post-hearing interrogatories posed to the vocational expert satisfied those requirements.
>
> Due process requires that a claimant be given the opportunity to cross-examine and subpoena the individuals who submit reports. *See Richardson* [*v. Perales*], 402 U.S. [389,] 402, 91 S. Ct. [1420,] 1427; *McClees v. Sullivan*, 879 F.2d 451, 452 (8th Cir. 1989). The ALJ, however, is not required to inform the claimant's attorney that the claimant has a right to cross-examine the vocational expert. *See Hudson*, 755 F.2d at 785. <u>The ALJ is required to allow the claimant to cross-examine the witness, but if the claimant's attorney fails to object to the post-hearing reports or remains silent when the opportunity to request cross-examination arises, the right to cross-examination is waived</u>. *See Wallace*, 869 F.2d at 194 (claimant's attorney objected to post-hearing reports and did not waive right to cross-examination, but this conduct must be contrasted with that of an attorney who does not object); *Hudson*, 755 at 784–85 (claimant's legal representative had opportunity to cross-examine doctor but did not respond and, thus, waived right).

> As previously indicated, in this case the ALJ sent Coffin's attorney two letters which indicated that Coffin could object to the interrogatories, propose his own interrogatories, comment on the evidence, and submit additional evidence. We hold that these letters satisfied due process requirements. However, our holding is limited to the facts of this case. If Coffin had been unrepresented, he would not have waived his right to cross-examination. If a claimant represents himself, the ALJ has a special responsibility to inform the claimant that he has the right of cross-examination. Coffin, however, was represented by a lawyer, an individual who is presumed to know about the right of cross-examination. The ALJ, therefore, is not required to list and explain every option available to an attorney in order to meet due process requirements. Thus, no due process violation occurred.

895 F.2d at 1211-12 [emphasis added].

Here, the ALJ complied with *Coffin* by disclosing the new VE evidence to Gann's counsel and giving him the opportunity to respond. AR 280. While Gann's counsel did submit a detailed response, he did not request the opportunity to cross-examine the VE. AR 282-83. Indeed, he stated that "in the interest of time," he would not request that additional interrogatories be submitted to the VE. AR 282. Instead, he highlighted alleged flaws in the VE's answers and noted that the VE had not had the benefit of hearing Gann's testimony. AR 282-83.

If the ALJ would have rejected a request for cross-examination, or would have refused a request to submit additional interrogatories to the VE, Gann would have a valid complaint. *See, e.g., Rahe v. Astrue*, 840 F. Supp. 2d 1119, 1137-39 (N.D. Iowa 2011) (claimant's due process rights were violated when the claimant's counsel submitted additional interrogatories but the ALJ declined to forward those interrogatories to the VE). Under the facts present here, however, Gann's procedural due process argument is without merit.

### 3. Gann's Credibility

#### A. Applicable Standards

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218. Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

In assessing a claimant's credibility, the ALJ must consider "the claimant's prior work history; daily activities, duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (citing *Polaski*, 739 F.2d at 1322); *see also* SSR 96-7p, 1996 WL 374186. The ALJ is not required to discuss each factor as long as he or she "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Another relevant factor is "the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 894 (8th Cir. 2000)). However, lack of objective medical evidence cannot be the sole reason for discounting a claimant's subjective complaints. *Mouser*, 545 F.3d at 638.

When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not the court's role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is

possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") [citations and quotations omitted].

### B.    Analysis

The ALJ commenced the credibility analysis by referencing SSR 96-7p, which lists the relevant factors.  AR 23.  He then provided the following reasons for concluding that Gann's subjective allegations were "less than fully credible:"

1.    There is no evidence that she complained of energy or motivation to any treating doctors, and no evidence that her medications were adjusted because of such complaints.

2.    There is no evidence that she has difficulties performing her daily activities and those activities tend to show that she has the ability to perform work.

3.    She did not demonstrate difficulty focusing or concentrating during the hearing.

4.    Her limited treatment history does not support her allegations and there is no evidence that she received regular mental health treatment after July 2012.

5.    She has been described as exhibiting exaggeration during examinations.

AR 23-24.  Gann attacks three of these reasons as being inaccurate.

First, she states that she complained about lack of energy on two occasions, once to Molly Earleywine, P.A.-C., and once to Laurie Warren, P.A.  Doc. No. 12 at 15 (citing AR 503, 713-14).  Gann did tell Ms. Warren on May 2, 2011, that her "energy and motivation have been up and down."  AR 503.  Likewise, in completing a questionnaire for Ms. Earleywine on December 8, 2011, Gann answering an inquiry about feeling tired or having little energy by responding:  "Nearly every day."  AR 713-

14. Thus, the ALJ erred in stating that there is "no evidence that [Gann] complained of energy and motivation to any of her treating doctors." AR 23.[6] More accurately, he should have stated that there is *little* evidence of such complaints. In addition, Gann does not challenge the ALJ's statement that her medication was never adjusted due to complaints that she lacked energy or motivation. Thus, the ALJ's larger point – which is that the contemporaneous treatment records are not consistent with Gann's subjective allegations concerning energy and motivation[7] – is not entirely inaccurate.

Second, Gann points out that she did seek mental health treatment on three occasions after July 2012. Doc. No. 12 at 15 (citing AR 1157, 1159 and 1161). And, in fact, Gann saw Dr. Idahosa, a psychiatrist, on August 24, 2012, September 24, 2012, and October 22, 2012. AR 1157, 1159 and 1161. Thus, the ALJ's statement that Gann did not receive regular mental health treatment after July 2012 is incorrect. I will not consider that to be a good reason supporting the ALJ's decision to discredit Gann's subjective allegations.

Third, Gann takes issue with the ALJ's reliance on comments contained in a written consultative examination report from January 2010. Doc. No. 12 at 15. That report, which is signed by both James Rusch, P.A.-C, and Jeffrey Krohn, M.D.,[8] raised issues about Gann's credibility. AR 292-93. At one point, the report states that Gann "seems to want to exaggerate her impairments" and provides examples. AR 293. It then concludes as follows:

> Perhaps I have become jaded over the years, but Bonnie seems to be an expert manipulator. Maybe it is her extensive hospitalizations but I have never seen anyone who could so easily list off mental health diagnoses and

---

[6] Technically, neither Ms. Earleywine nor Ms. Warren was a "treating doctor." However, I assume the ALJ did not intend to split hairs to that degree.

[7] Gann did not testify about lacking energy or motivation during the hearing, but she did include that allegation in her written report of disability. AR 40-63, 232, 235.

[8] I agree with Gann that the report appears to have been written by Mr. Rusch, as Dr. Krohn did not sign off on the report until 12 days later. AR 293.

medication lists without error or notes. If she truly has ADHD and learning disabilities this should have been much more difficult. It's as though she has studied for today's evaluation. She has been institutionalized with hospitals and prisons and I get the impression that this has trained her to give the answers she anticipates I am looking for. I am not an expert in mental health. I would not be able to determine her impairment for these problems. As far as physical impairments are concerned, I do not believe she has significant impairment. She claims to have carpal tunnel syndrome but states that she refuses to have any surgical correction of this problem. I did not she [sic] any muscle wasting secondary to this. She denies any parasthesias. She denies any problems handling objects. That is usually the first complaint patients complain of with carpal tunnel syndrome - they can't handle objects well due to the parasthesias. I think an evaluation by any orthopedist is necessary and (if necessary) definitive treatment be initiated. Her ranges of motion are fairly normal, her strength is normal and her gait is normal. Her Fibromyalgia Evaluation indicates that she claims to feel pain over most of the control points as well as almost all of the actual points. If I can be of further assistance please let me know.

*Id.* Gann complains that Mr. Rusch "had no business attacking the credibility of Gann's statements regarding her mental health" and concludes that "the ALJ erred in using them to discount Gann's credibility." Doc. No. 12 at 15.

Gann cites no authority for the proposition that an ALJ cannot give weight to a consultative examiner's concerns that the claimant was exaggerating symptoms. Clearly, a claimant's past exaggeration of impairments is an appropriate credibility factor. *Stephens v. Shalala,* 46 F.3d 37, 39 (8th Cir. 1995). Moreover, while Mr. Rusch acknowledged that he is not "an expert in mental health," he did not simply attack "the credibility of Gann's statements regarding her mental health," as Gann now suggests. He provided specific examples as to how, and why, he believes Gann exaggerated her physical symptoms, as well. AR 293. I reject Gann's unsupported legal argument that the ALJ erred in considering Mr. Rusch's concerns.

Gann does not address the ALJ's other stated reasons for discounting her credibility. With regard to activities of daily living, the ALJ noted that Gann walks to

the library, takes the bus, attends appointments and is able to shower and dress herself. AR 24.  He further observed that Gann performs chores, attends meetings and church services, does her own shopping and sometimes goes to temporary work agencies.  *Id.* The ALJ found that these activities suggest that Gann has greater physical and mental capabilities than she alleges.  *Id.*  "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'"  *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).  The ALJ's consideration of Gann's daily activities was appropriate and his findings are supported by substantial evidence.

The ALJ also noted that Gann appeared to have no difficulty focusing or concentrating during the hearing.  AR 23.  While an ALJ's observations cannot be the *sole* basis of his or her decision, "it is not an error to include his observations as one of several factors."  *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008).  Indeed, "[t]he ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations."  *Johnson*, 240 F.3d at 1147-48.

In short, and apart from the ALJ's error concerning mental health treatment after July 2012, the reasons supplied by the ALJ for discounting Gann's credibility are valid factors supported by substantial evidence.  As such, I must defer to the ALJ's credibility determination.  *Gregg*, 354 F.3d at 714.  I reject Gann's argument that the ALJ erred in this regard.

## VI.    CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Gann was not disabled be **affirmed** and that judgment be entered in favor of the Commissioner and against Gann.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the

service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 30th day of January, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE