**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

BONNIE JEAN GANN,

Plaintiff,

vs.

CAROLYN W. COLVIN, THE
COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

No. C 14-4026-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING PLAINTIFF'S**
**OBJECTIONS TO REPORT AND**
**RECOMMENDATION**

---

**TABLE OF CONTENTS**

I.    INTRODUCTION................................................................. 2

II.   PROCEDURAL HISTORY ................................................. 2

III.  REPORT AND RECOMMENDATION ................................ 3

IV.   GANN'S OBJECTIONS..................................................... 8

V.    DISCUSSION................................................................... 11
      A.   Standard Of Review ............................................... 12
      B.   ALJ's Findings That Gann's Fibromyalgia And Migraines
           Were Not Severe Impairments Are Supported By Substantial
           Evidence ............................................................... 13
           1.   Legal Standard.............................................. 13
           2.   Analysis ........................................................ 14
      C.   ALJ's RFC Findings And Hypotheticals To VE Are
           Supported By Substantial Evidence ........................ 17
           1.   Legal Standard.............................................. 17
           2.   Analysis ........................................................ 18
      D.   ALJ's Decision To Discredit Gann Is Supported By
           Substantial Evidence ............................................. 28
           1.   Legal Standard.............................................. 28
           2.   Analysis ........................................................ 29

VI.   CONCLUSION ................................................................ 33

# I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) from Magistrate Judge Leonard T. Strand, filed on February 3, 2015.  Report (docket no. 18).  In the R&R, Judge Strand recommends that I affirm the Commissioner's decision.

On February 17, 2015, Bonnie Jean Gann (Gann) filed timely objections to the R&R.  Plaintiff's Objections to the Report and Recommendation (hereafter Plaintiff's Objections) (docket no. 19).  Gann's argument that I should reverse the Administrative Law Judge's (ALJ) denial of benefits as it is not supported by substantial evidence is three-fold: the ALJ erred in (1) finding Gann's migraine headaches and fibromyalgia were not "severe" impairments; (2) determining Gann's RFC and submitting an inadequate hypothetical question to the VE; and (3) discrediting Gann's subjective allegations.  The Commissioner has not filed a response to Gann's objections, nor did the Commissioner file any objections to Judge Strand's R&R.  The 14-day window in which parties may file objections is now closed.  *See* 28 U.S.C. 636(b)(1)(C); *see also* FED. R. CIV. P. 72(b)(2).

The complete facts are presented in the parties' briefs and Judge Strand's R&R.  I recite the salient facts in the discussion section of this Memorandum Opinion and Order.  For the reasons discussed below, I accept the recommendations of Judge Strand, and affirm the Commissioner's decision that Gann is not disabled.  Accordingly, I enter judgment in favor of the Commissioner and against Gann.

# II.    PROCEDURAL HISTORY

On March 31, 2011, Gann filed for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act).  The Record (hereafter Tr.) at 156.  Gann alleged that her disability began on January 1, 2000.  Tr.

12.  Gann's claim was denied on June 22, 2011.  Tr. 83–90.  After her claim was denied, Gann requested a reconsideration of her disability claim.  Tr. 91–93.  Gann's request for reconsideration was denied on August 22, 2011.  Tr. 96–106.  After filing a request for a hearing before an ALJ, the Honorable James D. Goodman, Gann had an administrative hearing on November 20, 2012.  Tr. 32–65.

Following the ALJ's hearing, on February 7, 2013, the ALJ issued a ruling, finding Gann was not disabled between March 31, 2011 and February 7, 2013, and denying Gann's application for disability benefits.  Tr. 25; *see also Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (noting that for SSI benefits, the period at issue is from the date of the claimant's filing of her application).  Gann sought review of the ALJ's decision by the Appeals Council, which denied Gann's request for a review on January 24, 2014.  Tr. 1–6.  Thus, the ALJ's decision became the Commissioner's final decision.  Tr. 1.  On March 26, 2014, Gann brought suit in federal court seeking review of the Commissioner's decision.[1]  Judge Strand's R&R followed on February 3, 2015, which recommends that I affirm the decision of the Commissioner and deny Gann's claim for disability benefits.  Report at 1, 26.

## III.  REPORT AND RECOMMENDATION

Judge Strand rejected Gann's objections to the ALJ's decision.  I briefly summarize Judge Strand's findings below.  Then, I discuss the objections Gann raises in response to Judge Strand's R&R.

First, Judge Strand found that the ALJ's decision that Gann's impairments of fibromyalgia and migraine headaches were not "severe" is supported by substantial

---

[1] Gann was represented by Al Sturgeon, an attorney, at the administrative proceedings stage.  Tr. 12.  A different attorney, Jay Denne, represents Gann on her present claim in federal court.  Plaintiff's Objections at 16.

evidence. Report at 10. Judge Strand was convinced by the Commissioner's contention that, although Gann sometimes sought treatment for migraines and fibromyalgia, Gann did not establish that such conditions significantly impaired her ability to work. *Id.* "Simply pointing to instances in which Gann was treated for migraines and fibromyalgia, or stating that migraines occurred 'a lot,' does not demonstrate that these conditions significantly limited Gann's physical or mental ability to do basic work activities," wrote Judge Strand. *Id.* According to Judge Strand, the medical evidence did not support Gann's claim that migraine headaches and fibromyalgia significantly limited her ability to work. *Id.* at 11. In addition, Judge Strand found that the ALJ properly gave less credence to Gann's subjective allegations about these two impairments because they were unreliable. *Id.*

Second, Judge Strand found that the ALJ's assessments of Gann's mental and physical residual functional capacity (RFC) are supported by substantial evidence in the record. *Id.* at 17. "The ALJ provided a lengthy explanation, with precise citations to the record, for each component of the physical RFC and mental RFC." *Id.* In reaching that conclusion, Judge Strand was not convinced by Gann's two counter arguments, which sought to undermine the ALJ's RFC findings. *Id.* at 14.

In regards to Gann's first argument, Judge Strand reasoned that the ALJ's mental RFC finding is not contradicted by other findings in the ALJ's opinion or by Dr. Marandola's opinion. This is because mental impairments that may have been deemed "severe or not" at steps two and three of the ALJ's analysis "do not automatically translate into limitations on the claimant's ability to work."[2] *Id.* at 16. The RFC in this

_____

[2] The Commissioner applies a five-step sequential analysis prescribed by the social security regulations to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The five steps include the following: (1) the claimant conducts work

case, therefore, is not flawed merely "because it does not reflexively recite the ALJ's prior finding that Gann had marked difficulties with regard to concentration, persistence, or pace." *Id.* Additionally, the ALJ was not required to defer to Dr. Marandola's opinion unqualifiedly, or give it "controlling weight," in making an RFC determination only because the ALJ gave Dr. Marandola's opinion "great weight." *Id.* (citing 20 C.F.R. § 416.927(c)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005)). Rather, Judge Strand reiterates an essential point: "[T]he RFC must be reviewed in light of the entire record[.]" *Id.* at 16–17.

As to Gann's second argument, Judge Strand explained that the hypothetical questions posed to the vocational expert (VE), Jim van Eck, were not flawed by the ALJ's decision not to incorporate certain mental impairments discussed at step three of the ALJ's analysis.[3] *Id.* at 18–19. Quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996), Judge Strand found that "[b]ecause the RFC was proper, hypothetical questions based on that RFC properly addressed 'those impairments that the ALJ finds are substantially supported by the record as a whole.'" *Id.* The VE's testimony elicited by the ALJ, based on the "properly-formed hypothetical questions," was, according to Judge Strand, "substantial evidence supporting the ALJ's finding that Gann is able to perform past relevant work." *Id.* at 19 (citing *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010)). Agreeing with the Commissioner, Judge Strand also explained that the "VE testimony was not necessary at step four, as it was Gann's burden to prove that she was unable to

---

for substantial gain; (2) the claimant has a severe impairment; (3) the impairment equals or exceeds a listed impairment; (4) the claimant can perform his past relevant work; and (5) there exist other jobs in substantial numbers available for a person of the claimant's limitations. 20 C.F.R. § 404.1520(a)(4); *see also Snead v. Barnhart*, 360 F.3d 834, 836 n.2 (8th Cir. 2004).

[3] At step three, the ALJ found that Gann has "marked difficulty maintaining concentration, persistence or pace." Tr. 17.

perform past relevant work." *Id.* at 19 n.4 (citing *Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003)). Next, citing to *Coffin v. Sullivan*, 895 F.2d 1206 (8th Cir. 1990), Judge Strand took issue with Gann's misplaced reliance on *Wallace v. Bowen*, 869 F.2d 187 (3d Cir. 1989), a factually distinguishable case. Tr. 19–20. In doing so, Judge Strand articulated his rationale for finding that the ALJ was not required to conduct a new hearing, even though the VE's opinions were obtained after the hearing. *Id.* at 21. This is because, unlike the claimant's attorney in *Wallace*, who objected to post-hearing reports and did not waive the right to cross-examination, Gann's attorney "did not request the opportunity to cross-examine the VE." *Id.* at 21 (citing Tr. 282–83).

Third, Judge Strand found that the ALJ's decision to discount Gann's credibility was supported by substantial evidence. Report at 25–26. In explaining his rationale as to the credibility issue, Judge Strand recited the five reasons that the ALJ provided for "concluding that Gann's subjective allegations were 'less than fully credible[.]'"[4] *Id.* at 23. Then, Judge Strand rebutted two criticisms and agreed with one criticism made by Gann in regards to the ALJ's five reasons.

Agreeing with Gann, Judge Strand found that one of the ALJ's reasons for discrediting Gann's subjective allegations as to her mental health—*i.e.*, Gann did not receive regular mental health treatment after July 2012—was *not* supported by the record. "[I]n fact, Gann saw Dr. Idahosa, a psychiatrist, on August 24, 2012, September 24,

---

[4] Judge Strand listed the ALJ's five reasons for finding that Gann's subjective allegations were not credible: (1) there is no evidence that she complained of a lack of energy or motivation to any treating doctors, and no evidence that her medications were adjusted because of such complaints; (2) there is no evidence that she has difficulties performing her daily activities and those activities tend to show that she has the ability to perform work; (3) she did not demonstrate difficulty focusing or concentrating during the hearing; (4) her limited treatment history does not support her allegations and there is no evidence that she received regular mental health treatment after July 2012; and (5) she has been described as exhibiting exaggeration during examinations. Tr. 23–24.

2012, and October 22, 2012." *Id.* at 24 (citing Tr. 1157, 1159, 1161). For that reason, Judge Strand did "not consider that to be a good reason supporting the ALJ's decision to discredit Gann's subjective allegations." *Id.*

In addition, Judge Strand explained that it may be true that the ALJ erred by not accounting for some complaints by Gann to medical experts as to her lack of energy and motivation in 2011. Instead of indicating that there was "no evidence" of Gann complaining of her energy and motivation, a more accurate assessment by the ALJ would have been to indicate that there was "*little*" of such evidence. *Id.* Then again, Gann failed to object to the ALJ's statement that Gann's medication was never adjusted due to such complaints. Thus, Judge Strand found it was "not entirely inaccurate" for the ALJ to assert that Gann's "contemporaneous treatment records are not consistent with Gann's subjective allegations concerning energy and motivation." *Id.*

Disagreeing with Gann's "unsupported legal argument," Judge Strand found that the ALJ properly gave weight to a consultative examiner's (Physician Assistant (PA) James Rusch) concerns that Gann exaggerated her symptoms.[5] *Id.* at 25. Citing to *Stephens v. Shalala*, 46 F.3d 37, 39 (8th Cir. 1995), Judge Strand explained that "[c]learly, a claimant's past exaggeration of impairments is an appropriate credibility factor." *Id.* Judge Strand highlighted the fact that PA Rusch's report held up to critical scrutiny the credibility of Gann's statements as to her mental health, and "provided specific examples as to how, and why, [the examiner] believes Gann exaggerated her physical symptoms, as well." *Id.* Judge Strand also took issue with the fact that Gann

---

[5] Although the report is signed by both PA James Rusch and Dr. Jeffrey Krohn, I agree with Judge Strand that the report appears to have been written solely by PA Rusch. This is because Dr. Krohn "did not sign off on the report" until after PA Rusch signed the report. Report at 18 (citing Tr. 293).

did not address any of the "ALJ's other reasons for discounting her credibility," such as her daily activities, or ability to focus and concentrate during the ALJ's hearing. *Id.*

## IV.   *GANN'S OBJECTIONS*

In Gann's brief, she makes three objections to Judge Strand's R&R.   Below I summarize Gann's objections, following which I discuss the issues raised by Gann's brief.   Then, I provide my rationale for adopting the findings in Judge Strand's R&R.

Gann initially contends that Judge Strand erred in finding that substantial evidence supports the ALJ's decision that Gann's fibromyalgia and migraines were not "severe" impairments.   Plaintiff's Objections at 8.   As to the migraines, Gann argues that the ALJ erred in stating that "there is nothing in the record to show that the claimant's history of migraine headaches . . . have any effect on her functioning." *Id.* at 9 (quoting Tr. 15). Citing to the record (*i.e.*, Tr. 915–939, 712, 733), Gann argues that she sought treatment in October of 2011 for headaches, and she testified that she got "migraine headaches 'a lot.'" *Id.* (quoting Tr. 49–50).   As to the fibromyalgia, Gann contends that the ALJ erred in stating that "treatment records throughout 2011 and 2012 do not refer to any specific fibromyalgia treatments." *Id.*   Citing to four pages of the record (*i.e.*, Tr. 712, 731, 748, 761), Gann makes the case that fibromyalgia treatments are discussed "at various places in the record." *Id.*   Gann advances her argument by contending that neither the ALJ nor Judge Strand "adequately" accounted for the evidence relating to her treatment records for migraine headaches and fibromyalgia. *Id.*   Gann also contends that the "underlying decisions" did not appropriately account for the standard articulated in

*Polaski v. Heckler*, 739 F.2d 1320, 1321–22 (8th Cir. 1984) when considering Gann's subjective allegations to prove that her impairments were "severe."[6]  *Id.* at 10.

Gann next argues that Judge Strand erred in finding that the ALJ's RFC determination and hypothetical questions to the VE were supported by substantial evidence.  *Id.* at 11.  The gravamen of Gann's contention is that the ALJ reached other conclusions in his decision that "conflicted" with his RFC findings and the hypothetical questions posed to the VE.  *Id.*  In particular, Gann focuses on the ALJ's conclusion that Gann had "marked difficulties with concentration, persistence, and pace," and the ALJ gave "great weight" to Dr. Marandola's report, but Dr. Marandola found "numerous mental health limitations and behavioral problems" with Gann.  *Id.* at 11–12.  According to Gann, the ALJ committed reversible error by not incorporating these mental limitations into his RFC findings, or the hypothetical questions posed to the VE.  *Id.* at 12.  Quoting a lengthy passage from *Pickney*, 96 F.3d at 296–97, Gann emphasizes "the importance of including all of a claimant's limitations in questioning the VE."  *Id.* at 12–13. Relatedly, Gann takes issue with the ALJ's conclusion that she could work at a job with a stress level of "5"—that is, midway between the stress of a dishwasher and an air traffic controller—based on the VE's responses to the ALJ's questioning, and medical

---

[6] In quoting *Polaski*, Gann emphasizes one paragraph, in particular:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

*Polaski*, 739 F.2d at 1322.

professionals' opinions from 2010 to 2012 as to Gann's ability to handle stress. *Id.* at 13. "[N]o evidence in the record," Gann argues, "supports a conclusion that [Gann] could handle that level of stress." *Id.*

Gann's final argument is that Judge Strand erred in finding that the ALJ's decision as to Gann's credibility was supported by substantial evidence. *Id.* at 14. According to Gann, "The ALJ found that Gann's testimony regarding her physical and mental limitations was not credible, to the extent that she alleged limitations that exceeded the ALJ's [RFC] assessment." *Id.* However, Gann argues that because the ALJ's RFC assessment is flawed for leaving out limitations, the credibility findings of the ALJ are also "flawed." *Id.* In addition, Gann disagrees with the "factual bases" on which the ALJ's credibility findings rest. *Id.* She reemphasizes the points Judge Strand made as to the ALJ's mistaken assertions that the "record contains no evidence that the claimant complained of energy and motivation to any of her treating doctors," and that Gann did not seek "mental health treatment from a psychologist or psychiatrist after July 2012." *Id.* (quoting Tr. 23); *see also* Report at 23–24. Gann also criticizes Judge Strand's conclusion that the ALJ properly relied on PA James Rusch's opinion as his opinion is "inconsistent with numerous mental health providers in the record," and PA Rusch has an obvious bias and lack of expertise as to mental health. *Id.* at 14–15. Gann also disagrees with Judge Strand's characterization of this argument as an "unsupported legal argument" because, in an earlier brief, she referred to case law indicating that the Social Security Administration should not rely on a doctor's opinion outside of his expertise. *Id.* at 15 (citing *Short v. Sullivan*, 730 F.Supp. 955, 961 (S.D. Indiana 1989)). Citing to an opinion of the Seventh Circuit Court of Appeals, *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010), Gann also disagrees that her activities of daily living are incompatible with a finding of disability. *Id.* at 15–16.

Based on Gann's three objections to the R&R,[7] she requests that I "reject the Report and Recommendation, and reverse the decision of the Defendant with directions to award Supplemental Security Income benefits to [Gann]." *Id.* at 16. As an alternative, Gann requests that I "remand the case to the Social Security Administration for further proceedings." *Id.*

## V. DISCUSSION

The focal point of my inquiry is whether to accept Judge Strand's R&R that there was substantial evidence in the record to support the ALJ's decision that Gann was not disabled since March 31, 2011, the date her application for disability was filed. *See Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). In resolving this matter, I consider each issue Gann presents—namely, whether: (1) substantial evidence supports the findings of the ALJ that Gann's fibromyalgia and migraines were not "severe" impairments; (2) the ALJ's RFC determination and hypothetical questions submitted to

---

[7] Gann's objections to Judge Strand's R&R focus on the same issues as the objections she raised with regard to the ALJ's opinion. *See, e.g.*, Plaintiff's Objections (docket no. 19); *see also* Plaintiff's Brief (docket no. 12); Plaintiff's Reply (docket no. 16). Also, many of Gann's arguments amount to requests that I reweigh the evidence. However, my role is not to "reweigh the evidence presented to the ALJ or to try the issue[s] . . . de novo." *Howe v. Astrue*, 499 F.3d 835, 839 (8th Cir. 2007). As the Eighth Circuit Court of Appeals has explained, "We may not reverse merely because the evidence is capable of supporting the opposite conclusion." *Hensley v. Barnhart*, 352 F.3d 353, 355 (2003) (citing *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995)); *see also Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995) ("If, after making this review, 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings, we must affirm the decision' of the Secretary." (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir.1992))).

the VE were supported by substantial evidence; and (3) the ALJ's credibility finding was supported by substantial evidence in the record.

## A.    Standard Of Review

I review *de novo* the portion of the R&R to which Gann objects.[8]  28 U.S.C. § 636(b)(1)(C).  The Commissioner does not raise any objections to Judge Strand's R&R. Therefore, I must "make a de novo determination" only as to the objections made by Gann.  28 U.S.C. § 636(b)(1)(C).  I review the other portions of the R&R only for clear error.  *See* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").  Having reviewed the 1177 pages of the administrative record, I find Judge Strand's recommendations—those which were not objected to by the parties—are not clearly erroneous.

As to the ALJ's decision to deny social security benefits, the ALJ's decision on this matter must be affirmed "if it is supported by substantial evidence on the record as

---

[8] As explained in 28 U.S.C. § 636(b)(1)(C):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CIV. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.")

a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). "Substantial evidence is 'less than a preponderance but is enough that a reasonable mind would find it adequate to support' [the Commissioner's] conclusion." *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002)). "If substantial evidence supports the ALJ's decision, [the Court] will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because [the Court] would have decided differently." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The Eighth Circuit Court of Appeals has indicated that it "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).

### B. ALJ's Findings That Gann's Fibromyalgia And Migraines Were Not Severe Impairments Are Supported By Substantial Evidence

#### 1. Legal Standard

The ALJ considers whether a claimant's impairment is "severe" at the second step of the ALJ's five-step analysis. According to the Eighth Circuit Court of Appeals, a "severe impairment" is defined as an impairment that "'significantly limits [the claimant's] physical or mental ability to do basic work activities.'"[9] *Martise v. Astrue*,

---

[9] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" as well as "[c]apacities for seeing, hearing, speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" using

641 F.3d 909, 923 (8th Cir. 2011) (quoting *Pelkey*, 433 F.3d at 577). "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms . . ." *Id.* (quoting 20 C.F.R. § 404.1508). The burden is on the plaintiff to prove that her impairment, or combination of impairments, is "severe." *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (citing *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998)).

If the impairment only amounts to a "slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities," then the impairment is "not severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet," the Eighth Circuit Court of Appeals has explained, "but it is also not a toothless standard, and [the appellate court] [has] upheld on numerous occasions the Commissioner's finding that a claimant has failed to make this showing." *Id.* at 708 (citations omitted); *see also Martise*, 641 F.3d at 924 (finding claimant's condition of migraine headaches did not constitute a severe impairment where the record was "void of any diagnostic testing"; the claimant worked during the time she sought regular treatment for her impairment and there was no medical evidence that the impairment worsened; and the claimant's impairment "responded to medication.").

### 2. Analysis

I agree with the ALJ's opinion and Judge Strand's R&R that Gann has *not* met her burden of proving that her impairments of fibromyalgia and migraine headaches are "severe" impairments. *See Mittlestedt*, 204 F.3d at 852.

---

judgment, "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

First, the record lacks sufficient medical evidence to support Gann's claim that her impairments "significantly" limit her ability to perform basic work activities. Report at 10; *see also Martise*, 641 F.3d at 923; *Kirby*, 500 F.3d at 707; *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992) ("[P]roof of a disabling impairment must be supported by *at least some* objective medical evidence.") (emphasis added). Although it is true that Gann was treated for her migraine headaches and fibromyalgia, Judge Strand is correct in finding that Gann failed to demonstrate how her alleged impairments "significantly" limited her physical and mental abilities to perform basic work activities. Report at 10; *see also Martise*, 641 F.3d at 923.

Second, although not discussed by Judge Strand in his R&R, I am further convinced that Gann's fibromyalgia and migraines were not "severe" impairments because both impairments were successfully controlled with medication. *See Martise*, 641 F.3d at 924; *see also Wildman*, 596 F.3d at 965 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004))); *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) ("Impairments that are controllable or amendable to treatment do not support a finding of total disability."). For instance, Gann's brief, objecting to Judge Strand's R&R, provides that her migraine headaches were controlled with medication, including Topiramate, Lyrica, and Cymbalta. Plaintiff's Objections at 9 (citing Tr. 712, 733). Additionally, Gann's brief provides that her fibromyalgia was controlled with medication, including Lyrica and Cymbalta. *Id.* (citing Tr. 712, 731, 748, 761). Surprisingly, when asked at the ALJ's hearing what medications she currently takes, Gann did not indicate that she was taking any of the medications referenced in her brief to treat her migraine headaches and fibromyalgia. While indicating that she does not experience any side

effects from the use of the medications prescribed by her psychiatrist, Gann suggested that the changes in her medication were attributed to an overdose.[10]

Finally, as discussed in greater detail below, the ALJ was convinced that Gann's subjective allegations as to the nature and severity of her impairments were exaggerated and unreliable. Report at 10 (Tr. 23–24). Indeed, the ALJ stressed that one consultative examiner, Dr. Douglas W. Martin, "observed that 'every place that [he] touched' elicited pain response from [Gann]" when she was being examined for allegations of fibromyalgia. Tr. 15, 19. "Another consultative examiner questioned the legitimacy of [Gann's] pain response during an examination[.]" *Id.* at 15. The record also provides that experienced examiners, PA Rusch and Dr. Krohn, opined that Gann was an "expert manipulator," who seemed to have prepared for her consultative examination. Tr. 293. This is because Gann listed multiple mental health diagnoses and medications without error or notes, and seemed to exaggerate her impairments. Tr. 23, 293. Taking into account PA Rusch's and Dr. Krohn's report, the ALJ wrote, "Efforts to impede accurate testing and evaluation support a finding of poor credibility." Tr. 23. Reaching the same conclusion as Judge Strand, I find the evidence supports the ALJ's credibility assessment and decision to discredit Gann's subjective allegations as to her migraine headaches and fibromyalgia. For all the reasons discussed above, substantial evidence supports the ALJ's findings that Gann's fibromyalgia and migraines were not "severe" impairments.

---

[10] It is worth mentioning here that, upon review of the facts in the record, PA Rusch's suggestion that some of Gann's complaints were contrived does not seem unreasonable. This is because Gann has a history of using multiple illicit drugs, and she was incarcerated for various violations of criminal law. Those experiences are relevant to understand PA Rusch's report and illustrate why he believed Gann had enough institutional knowledge to be "trained" to give answers that she anticipated PA Rusch was looking for during her examination. Tr. 293.

### C. ALJ's RFC Findings And Hypotheticals To VE Are Supported By Substantial Evidence

#### 1. Legal Standard

If it is determined by the ALJ that the claimant's impairments do not meet or equal a listed impairment, then at step four of the ALJ's five-step analysis, the ALJ will consider the claimant's RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Martise*, 641 F.3d at 923 (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)). "[S]ome medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" *Lauer v. Apfel*, 245 F.3d 700, 703-04 (8th Cir. 2001) (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (*per curiam*); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)) (internal citations and quotation marks omitted).

However, "the ALJ [is] not limited to considering medical evidence . . . ." *Id.* at 704. Rather, the ALJ must "assess[] a claimant's residual functional capacity based on all relevant evidence." *Guilliams*, 393 F.3d at 803 (quoting *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)). Relevant evidence includes "medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (internal quotation and citation omitted)). "[T]he burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

In analyzing a claimant's RFC at step five, as Judge Strand rightly noted in his R&R, the Commissioner "ordinarily can rely on the testimony of a VE to show the

claimant can perform other work." Report at 12 (citing 20 C.F.R. § 416.966(e); *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008)). On the one hand, a VE's "testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994) (citing *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991)). On the other hand, a VE's "testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey*, 622 F.3d at 922 (citing *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)). That is to say, the ALJ's hypothetical questions "need[ ] to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Hinchey*, 29 F.3d at 432 (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993)).

### 2. *Analysis*

I find that the ALJ's decision that Gann retains the physical and mental RFC to perform light and medium work is supported by substantial evidence in the record.[11]

---

[11] The ALJ determined that Gann retains the RFC to:

> [L]ift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for up to six hours, and sit for up to six hours, cumulatively. She may alternate her position every two hours. She may climb, balance, kneel, handle, and grip frequently. The claimant may frequently bend, crouch, and crawl, but she may never climb ladders, ropes, or scaffolds. In addition, the claimant may have occasional contact with co-workers and supervisors. The claimant also may undertake work at a stress level of five on a scale of one to 10, one being, by example, the work of a night dishwasher, and 10 being the work of an air traffic controller (as these

Judge Strand rejected Gann's argument that a "marked limitation" found by the ALJ at step three of the sequential evaluation process must be included in the RFC findings used at steps four and five. Report at 15. As Judge Strand correctly explained, "The RFC is not simply a laundry list of impairments and limitations," rather, "it is an explanation of 'what [the claimant] can still do' despite his or her 'physical or mental impairments.'" *Id.* (quoting 20 C.F.R. § 404.1545(a)(1)). Thus, the ALJ, in determining Gann's RFC, appropriately considered the entire record and not merely his prior step two or three findings. In reaching the same conclusion as Judge Strand, I am persuaded by the case law that he referenced in his R&R,[12] which indicates that, even if a claimant has a severe condition, that fact alone is *not* definitive of whether the claimant is able to work. *Id.* at 15–16.

In addition, the ALJ weighed the merits of Dr. Marandola's cited limitations with the record to determine the appropriate RFC for Gann. Concurring with the ALJ's opinion and Judge Strand's R&R, I find that the ALJ resolved the seemingly conflicting statements in Dr. Marandola's report when reaching his RFC findings. While the ALJ restricted Gann to "occasional contact with co-workers and supervisors" and a lower

---

occupations are generally performed in the national economy.).

Tr. 18.

[12] *See, e.g.*, *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (8th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (quoting *Yang v. Comm'r of Soc. Sec.*, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004))); *Taylor v. Astrue*, Civil Action No. BPG–11–0032, 2012 WL 294532 (D. Md. Jan. 31, 2012) ("It is possible, therefore, for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work.").

stress level, based on Dr. Marandola's opinion, the ALJ noted that Dr. Marandola "found that [Gann] had fluent speech, a neutral mood and affect, logical, coherent and goal directed thought processes[.]" Tr. 20. "In addition, [Gann] displayed orientation (not exact as to time) and no problems with tasks testing her registration, naming, repetition, comprehension, reading, writing, and drawing[.]" Tr. 20, 435. Although Gann made "errors on serial seven calculations and recalled two out of three words after a brief interval," she could perform serial three subtractions without difficulty. Tr. 21. An ALJ assesses the RFC of a claimant based on all of the relevant evidence, which includes "medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations." *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004) (citation omitted). In evaluating Gann's RFC, the ALJ properly considered "all of the relevant evidence," including giving "great weight" to Dr. Marandola's opinion, before finding Gann not disabled.[13] *Id.*

Also in agreement with Judge Strand, I find that the ALJ's physical and mental RFC determinations are supported by substantial evidence in the record. In regards to Gann's physical RFC findings, the ALJ reviewed Gann's treatment records and opinion evidence from 2011 and 2012 and reasonably concluded that she could perform work at a medium or light exertional level based on such records. Tr. 18–19. "Most recently, in July 2012, [Gann] had a slow gait, but she had a 5/5 on motor strength, intact coordination, the ability to heel to toe walk without difficulty, a negative Romberg test,

---

[13] Judge Strand alluded to the important distinction between an ALJ granting "great weight" and "controlling weight" to a medical expert's opinion in his R&R. Report at 16 (citing 20 C.F.R. § 416.927(c)(2); *Ellis*, 392 F.3d at 995); *see also Martinez v. Astrue*, Civ. No. 10–5027, 2012 WL 1027637, *6 (S.D. Mar. 24, 2012) (affirming the Commissioner's decision where "[i]n arriving at the RFC, the ALJ gave 'great weight,' but not 'controlling weight' to Dr. Lawlor's opinions and 'lesser weight' to the opinions of Dr. Brady.").

normal sensation, and normal reflexes," wrote the ALJ. Tr. 19. The ALJ properly accounted for Gann's obesity; the ALJ noted that no evidence suggested additional physical limitations were necessary on that basis. Report at 17 (citing Tr. 19).

Concerning Gann's mental RFC findings, the ALJ thoroughly reviewed and analyzed Gann's records. The ALJ determined that, although restrictions on Gann's ability to tolerate stress were necessary, which is consistent with the ALJ's step three finding, Gann could perform work. Tr. 20–21. In analyzing the medical opinions as to Gann's mental impairments, the ALJ gave "great weight" to Dr. Marandola's opinion, and accordingly, restricted Gann's contact with co-workers and supervisors and stress level.[14] *Id.* Unlike other medical experts of record, Dr. Marandola reviewed the record at the hearing level and examined Gann. Tr. 20–22. In addition to the record indicating that Gann is not prevented from performing her daily activities based on mental impairments, there is other evidence in the record to suggest that Gann is mentally competent. The record, for example, contains evidence that Gann can concentrate to read, watch movies, use a computer, pay bills, and count change. Tr. 17. Thus, I affirm the ALJ's physical and mental RFC findings because they are supported by "substantial evidence on the record as a whole." *Eichelberger*, 390 F.3d at 589.

Judge Strand concluded that, "[b]ecause the RFC was proper," the ALJ's hypothetical questions to the VE, which were based on the ALJ's RFC, "properly

---

[14] As the ALJ noted, Dr. Marandola "opined that [Gann] could understand instructions, procedures, and locations with difficulty remembering them, carry out instructions with poor attention and concentration, and that she would have significant difficulty interacting appropriately with supervisors, coworkers, and the public for extended periods of time, while having a GAF of 52[.]" Tr. 20. This opinion, according to the ALJ, was consistent with the restrictions that the ALJ incorporated into his mental RFC assessment. *Id.*

addressed 'those impairments that the ALJ [found were] substantially supported by the record as a whole.'"[15] Report at 18–19 (quoting *Pickney*, 96 F.3d at 296). I agree. To strengthen Judge Strand's finding, however, I distinguish the key cases relied upon by Gann in her objections to the R&R on this point.[16] *See* Plaintiff's Objections at 12–13. The crux of Gann's argument that the VE's hypothetical questioning should have reflected additional mental limitations seems to rest on two mistaken beliefs: (1) the ALJ erred by not incorporating certain limitations from Dr. Marandola's opinion into the ALJ's RFC findings and the resulting hypothetical question to the VE; and (2) the ALJ's RFC findings, and the resulting hypothetical question to the VE, needed to reflexively recite the ALJ's prior finding that Gann had marked difficulties with regard to concentration,

---

[15] Gann concedes in her initial brief and objections that the ALJ's post-hearing hypothetical question to the VE included the limitations in the ALJ's RFC findings. *See* Plaintiff's Brief at 10–11; *see also* Plaintiff's Objections at 11.

[16] I focus my attention on *Pickney*, 96 F.3d at 296–97, and *Jelinek v. Astrue*, 662 F.3d 805, 813–14 (7th Cir. 2011), as Gann quotes a long passage from *Pickney* and specifically compares *Jelinek*, *i.e.*, non-binding authority from the Seventh Circuit, to this case. *See* Plaintiff's Objections at 12–13. For support, Gann also includes a string citation to *Swope v. Barnhart*, 436 F.3d 1023 (8th Cir. 2006); *Grissom*, 416 F.3d at 834; *Hunt v. Massanari*, 250 F.3d 622 (8th Cir. 2001); and *Ekeland v. Bowen*, 899 F.2d 719 (8th Cir. 1990). *See id.* at 13. *Swope*, *Grissom*, and *Hunt*—cases that rely on *Pickney* and involve ALJs that erred by failing to include in hypothetical questions to VEs any reference of the claimants' "borderline intellectual functioning"—and *Ekeland*—a case involving a VE that "based her responses on an incomplete record and on hypothetical questions that failed to describe fully and precisely [the claimant's] impairments"—are distinguishable from this case. This is because, here, Gann did not establish that she had "borderline intellectual functioning," the ALJ's hypothetical was based on a "fully developed" record in accordance with 20 C.F.R. § 416.912, and, as discussed in greater detail below, the hypothetical was sufficient because it "properly reflected the impairments that the ALJ found to be supported by the record." *See* Tr. 12; *see also Prosch v. Apfel*, 201 F.3d 1010, 1015 (8th Cir. 2000).

persistence, or pace. *Id.* at 11–12. While I addressed the weight the ALJ gave to Dr. Marandola's opinion above and found that the ALJ properly considered "all of the relevant evidence" in making his proper RFC findings, *Masterson*, 363 F.3d at 737, I turn now to explain the aptness of the ALJ's hypothetical questions to the VE, in particular, hypothetical question number fifteen, which incorporates Gann's RFC.[17]

In her objections, Gann refers to *Pickney*, 96 F.3d at 296–97, to illustrate "the importance of including all of a claimant's limitations in questioning the VE." *Id.* at 12. In *Pickney*, the Eighth Circuit Court of Appeals reversed and instructed the district court to remand to the Commissioner for further proceedings as the ALJ "failed to include [the claimant's] mental impairments in the hypothetical question posed to the vocational expert." *Pickney*, 96 F.3d at 295. In reaching that holding, the Eighth Circuit Court of Appeals noted that "the ALJ acknowledged that [the claimant] has mental impairments and that finding is supported by objective evidence—the I.Q. scores." *Id.* at 296. The

---

[17] Reflecting the ALJ's physical and mental RFC determinations, Tr. 18, the ALJ's hypothetical question number fifteen to the VE was:

> Hypothetical person number one can lift and carry up to fifty (50) pounds occasionally, twenty-five (25) pounds frequently. This person can stand and walk up to six (6) hours and sit up to six (6) hours, cumulatively. This person may alternate position every two hours. This person may climb, balance, kneel, handle and grip on a frequent basis. This person may frequently bend, crouch, crawl, but never climb ladders, ropes and scaffolds. *This person may have occasional contact with co-workers and supervisors. This person may undertake work at a stress level of five (5) on a scale of one to ten, one being, by example the work of a night dishwasher, and ten (10) being the work of an air traffic controller, as these occupations are generally performed in the national economy.*

Tr. 274 (emphasis added).

appellate court continued: "The ALJ did not merely fail to mention the mental impairment, *he expressly directed the vocational expert to assume that [the claimant] had no mental impairments*." *Id.* at 296–97 (emphasis added). Thus, in *Pickney*, the ALJ's denial of benefits was reversed because the ALJ expressly excluded proven mental impairments from the VE's hypothetical. *Id.* at 297.

According to Gann, the ALJ's hypothetical question here was also similar to the hypothetical posed in *Jelinek*, 662 F.3d at 813–14. This is because the ALJ's question, Gann argues, was "largely related to physical limitations," and the ALJ did not adequately account for Gann's mental health limitations. *See* Plaintiff's Objections at 13; *see also* Plaintiff's Brief at 13. In *Jelinek*, the Seventh Circuit Court of Appeals reversed the district court's judgment and remanded the case to the Social Security Administration for further proceedings as the ALJ did not include all of the "physical and mental limitations the judge deem[ed] credible" in the ALJ's hypothetical question posed to the VE. *Jelinek*, 662 F.3d at 813. The hypothetical posed by the ALJ did not reflect the impact of the claimant's mental impairments, which "limited [the claimant's] ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment." *Id.* at 814.

I disagree with Gann's attempt to liken this case to either *Pickney* or *Jelinek*. Unlike *Pickney*, the ALJ in this case did *not* specifically state in his hypothetical that Gann did not have "any mental limitations" while Gann had "borderline intellectual functioning" with serious vocational limitations. *See Pickney*, 96 F.3d at 295 n.1, 297. Rather, in this case, the ALJ's hypothetical question included the physical and mental limitations that the ALJ deemed credible. Gann also did not establish that she is in the

category of "borderline intellectual functioning,"[18] like the claimant in *Pickney*. Also, the ALJ's hypothetical question in *Jelinek*, which did not refer to the claimant's inability "to maintain regular attendance, perform at a consistent pace, or deal with normal work stresses," is distinct from the ALJ's hypothetical here. *Jelinek*, 662 F.3d at 810. This is because the ALJ's hypothetical, in this case, reflects, in part, that Gann's mental limitations affect her ability to deal with the stresses of full-time employment. Tr. 274.

Notably, distinct from the hypotheticals posed in *Pickney* and *Jelinek*,[19] the ALJ's hypothetical question, here, was consistent with the ALJ's prior findings, included

---

[18] "Borderline intellectual functioning is a condition defined as an IQ score within the 71–84 range while mental retardation is a score of about 70 or below." *Hutsell v. Massanari*, 259 F.3d 707, 709 n.3 (8th Cir. 2001). The Eighth Circuit Court of Appeals has consistently "'concluded that borderline intellectual functioning, if supported by the record . . . is a significant nonexertional impairment that must be considered by a vocational expert.'" *Grissom*, 416 F.3d at 837 (8th Cir. 2005) (quoting *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997)); *cf. Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (indicating that "the ALJ was not required to present [the claimant's] limited mental capacity to the vocational expert," where there was substantial evidence that the claimant did not "exhibit borderline intellectual functioning," but recognizing that "a claimant's borderline intellectual functioning must be included in the hypothetical to the vocational expert[.]") (citation omitted).

[19] In *Pickney*, the ALJ's hypothetical question was:

> Let me ask you this—assuming that I find that he doesn't actually experience any mental limitations other than—well, the hypothetical didn't include any so let me ask you to assume that I would find that he didn't experience any mental limitations and that the only restrictions he would have would be those related to his age and education. What period of vocational adjustment, if any, would be necessary then?

*Pickney*, 96 F.3d at 297 (emphasis added). Thus, no mental impairment, or any concrete consequences of such impairments, were suggested by the ALJ's hypothetical question in

limitations that accounted for Gann's credible mental impairments, and described the consequences of her credible mental impairments. This is because the ALJ posed a hypothetical that limited Gann to "a stress level of five," and indicated that "[t]his person may have occasional contact with co-workers and supervisors."[20] Tr. 274. The ALJ discussed other opinions, such as the opinion of Michael Baker, Ph.D.,[21] that supported

_____

*Pickney*. In *Jelinek*, according to the Northern District of Indiana, the ALJ initially "asked the vocational expert to consider a hypothetical individual who was the same age as *Jelinek*, had the same education and work background and was limited to performing light, unskilled work." *Jelinek v. Astrue*, Case No. 3:09–CV–368, 2010 WL 3075024, *3 (N.D. Ind. Aug. 2, 2010). The court continued: "The second hypothetical question asked the vocational expert to consider an individual with Jelinek's age, education and work background but who was limited to sedentary, unskilled work." *Id.* Thus, similar to the hypothetical question posed in *Pickney*, no mental impairments, or any concrete consequences of such impairments, were suggested by the ALJ's hypothetical questions in *Jelinek*.

[20] Even Gann's previous attorney, Al Sturgeon, noted in a letter to the ALJ, dated January 25, 2013, that these two factors were "non-physical." Tr. 282.

[21] In the words of the ALJ,

> Dr. Baker observed that the claimant had good eye contact, normal speech, full cooperation, appropriate affect and a normal mood, no suicidal ideation (with a noted history of such), and no hallucinations (Exhibit 1F, p. 2). The claimant also recalled three out of four items after five minutes and subtracted threes from 20 without difficulty, and she had a good fund of knowledge, low average intellectual functioning, correct calculations on arithmetic problems at a slow pace, and a correct spelling of "world" backwards, while having problems with serial sevens (Exhibit 1F, p. 3). Further, the claimant showed full orientation and alertness, good memory and recall, fair concentration, and no significant impairment in insight and judgment (*Id.*).

the capabilities and limitations the ALJ incorporated into Gann's mental RFC. Tr. 21. Therefore, unlike the ALJ in *Pickney* and *Jelinek*, the ALJ in this case accounted for some degree of mental impairment for Gann. *See Hulsey*, 622 F.3d at 922 (distinguishing *Pickney* from *Hulsey* where the ALJ's hypothetical "limited [the claimant] to 'work of an unskilled nature involving only superficial interpersonal contact,'" and so, the court reasoned that the ALJ's hypothetical "accounted for some degree of mental impairment."); *see also McKinney*, 228 F.3d at 865 (recognizing that "[t]estimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." (quoting *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997))).[22] The ALJ's hypothetical also properly "limited the universe of work" that Gann can perform based on her credible mental impairments. *Hulsey*, 622 F.3d at 922. The ALJ "properly excluded the alleged impairments from the hypothetical question" that were not supported by the record, or accepted as valid by the ALJ. *McKinney*, 228 F.3d at 865; *see also Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("The ALJ's hypothetical question properly included all impairments that were accepted by the ALJ as true and excluded other alleged impairments that the ALJ had reason to discredit.").

---

Tr. 21–22.

[22] The facts of *Hulsey* are arguably stronger for the plaintiff than the facts for Gann in this case. This is because, in *Hulsey*, the plaintiff was restricted by "borderline intellectual functioning" and other serious mental impairments, including anxiety, depression, and a somatoform disorder. *Hulsey*, 622 F.3d at 921–22, 925. Hulsey was also treated for carpal tunnel syndrome, hypertension, and headaches. *Id.* at 919. All that said, while Gann does not fall into the category of "borderline intellectual functioning," the ALJ found her to have the following severe impairments: obesity, post-traumatic stress disorder, bipolar I disorder, attention deficit hyperactivity disorder, borderline personality disorder, and antisocial personality disorder. Tr. 14.

Finally, it is unnecessary for me to address the alleged procedural error that Gann asserted in her initial brief. *See* Plaintiff's Brief at 13–14. This is because, after reviewing the additional case law cited by Judge Strand—presumably, *Coffin*, 895 F.2d at 1212—Gann decided not to "pursue her prior argument that questioning of the VE was also flawed from a procedural standpoint." *Id.* at 13 n.2. For clarity's sake, I note my agreement with Judge Strand that a supplemental hearing was *not* required as Gann's former attorney, Al Sturgeon, was provided the opportunity to respond to the post-hearing evidence. Report at 21. Yet, Gann's former attorney did not seek to cross examine the VE when the opportunity arose. Tr. 282–83; *see also Coffin*, 895 F.2d at 1212. Instead, as Judge Strand noted in his R&R, "[Gann's attorney] highlighted the alleged flaws in the VE's answers and noted that the VE had not had the benefit of hearing Gann's testimony."[23] Report at 21 (citing Tr. 282–83). Thus, Judge Strand was right in deciding that Gann's procedural due process argument fails.

### D.    ALJ's Decision To Discredit Gann Is Supported By Substantial Evidence

#### 1.    Legal Standard

"The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." *Schultz v. Astrue*, 479 F.3d 979, 982 (8th Cir. 2007) (quoting *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002)). Moreover, as Judge Strand explained, "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Report at 22 (quoting *Pearsall*, 274 F.3d at 1218).

---

[23] Gann's former counsel merely wrote the following in his correspondence to the ALJ, dated January 25, 2013: "I would like to respond to the questions answers [sic] by Mr. VanEck [sic]. Rather than send additional interrogatories to him, and in the interest of time, we will simply substitute those interrogatories for comments regarding Mr. VanEck's [sic] opinion." Tr. 282.

"Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski*, 739 F.2d at 1322. In evaluating a claimant's credibility, the ALJ must look to the factors enumerated in *Polaski*: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *See Finch*, 547 F.3d at 935 (citing *Polaski*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "Other relevant factors include the claimant's relevant work history and absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 894 (8th Cir. 2000)).

### 2.    *Analysis*

In this case, the ALJ *did* err in discrediting Gann's assertions that she complained of a lack of energy and motivation to medical experts and that she received regular medical health treatment after July 2012. Upon review of the record, one would be hard pressed to disagree with Gann (or Judge Strand) on these points. As Judge Strand readily made clear, Gann complained of a lack of energy and motivation on May 2, 2011, and completed a questionnaire on December 8, 2011, which indicated that she feels tired or has little energy "[n]early every day." Tr. 503, 713–714. Accordingly, the ALJ was incorrect in his assessment of Gann's complaints of a lack of energy and motivation. Be that as it may, Judge Strand is right that Gann did not object to the ALJ's finding that Gann's medication was never altered to treat her lack of energy or motivation. Report at 24. In addition, contrary to the ALJ's assertion, Gann received treatment for her mental health on three occasions subsequent to July 2012. *Id.* (citing Tr. 1157, 1159, 1161). Therefore, the ALJ erred in indicating that Gann did not receive regular mental health treatment after July 2012.

Despite the factual inaccuracies in the ALJ's opinion, recognized by Judge Strand, which weigh in Gann's favor, I find those errors to be harmless because there is "no

indication that the ALJ would have decided differently" the issue of Gann's credibility. *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently had he read the hand-written notation to say 'walk' rather than 'work,' and any error by the ALJ was therefore harmless."). Further, I also agree with Judge Strand that the "reasons supplied by the ALJ for discounting Gann's credibility are valid factors supported by substantial evidence." Report at 26. The ALJ articulated several reasons to support its credibility finding: (1) Gann's daily activities were inconsistent with her complaints; (2) Gann's capabilities at the ALJ's hearing were inconsistent with her complaints; and (3) a report signed by James Rusch, a PA, and Jeffrey Krohn, M.D., raised serious issues about Gann's credibility. *See* Tr. 23–24.

As to Gann's daily activities, the ALJ discredited Gann's complaints based on the fact that "she walks to the library, takes the bus, attends appointments, and showers and dresses[.]" Tr. 24. Put simply, the record reflects that Gann is able to care for herself. The ALJ was also further convinced that Gann's subjective complaints were not credible based on other activities she performs, such as doing chores, attending meetings and church services, shopping, and occasionally going to temporary work agencies. *Id.* Gann also indicated that she does not have difficulty washing or bathing herself. *Id.* Aside from the activities mentioned, the record also provides that, during the time of her alleged disability, Gann enjoyed "hanging with her mother or boyfriend . . . writing, listening to music, walking, swimming, and biking." Tr. 434; *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (finding fact that claimant "continues to engage in many normal daily living activities including driving, shopping, visiting with friends and relatives, and picking up her grandchild" supports finding of ability to work.). Finally, as to the ALJ's observations of Gann at her administrative hearing, Gann showed no signs of difficulty focusing or concentrating. *See* Report at 26 ("While an ALJ's observations cannot be the *sole* basis of his or her decision, 'it is not an error to include his observations as one

of several factors.'" (quoting *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008))).  Nor did Gann complain about lacking energy or motivation during the administrative hearing. Tr. 40–63.

All of the above factors support the ALJ's adverse credibility finding as to Gann. These factors suggested to the ALJ, as Judge Strand rightly pointed out, that "Gann has greater physical and mental capabilities than she alleges."  Report at 26 (citing Tr. 24); *see also Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001))).    Therefore, agreeing with Judge Strand's recommendation, I find it is appropriate for me to give deference to the ALJ's proper credibility assessment and find that Gann has the ability to perform work.  *See Schultz*, 429 F.3d at 983 ("We will defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" (quoting *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (quoting *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990)))). The ALJ's conclusion that Gann is "capable of performing past relevant work as a Certified Nursing Assistant, Laborer, Bus Person, Housekeeper, Fast Food Worker, and Newspaper Carrier" is supported by substantial evidence.  Tr. 24.

In reaching this conclusion, I do not overlook Gann's citation to *Short*, 730 F.Supp. at 961, in support of the argument that "the SSA should not rely on doctor's [sic] opinions which are outside of their scope of expertise."  Plaintiff's Objections at 15. In *Short*, a doctor "stepped out of his realm of expertise and expressed an opinion on a vocational issue," and thus, "the ALJ was entitled to discount this report in favor of other evidence."  *Short*, 730 F.Supp. at 961.  More specifically, the doctor "render[ed] an opinion as to the availability of jobs for a person with one arm."  *Id.*  The ALJ was aware of the report and noted that it "was not accompanied by supporting clinical findings."

*Id.* According to Gann, PA Rusch was "not qualified to render an opinion as to whether [Gann's] reported mental health issues and symptoms were legitimate or not[.]" Plaintiff's Objections at 15. For that reason, Gann argues, "The ALJ's credibility conclusions are not supported by the record." *Id.* I reject this argument.

In Judge Strand's R&R, he cites to *Stephens*, 46 F.3d at 39, in support of the proposition that "[c]learly, a claimant's past exaggeration of impairments is an appropriate credibility factor." Report at 25; *see also Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) ("Given Dr. Erby's comments about 'probable dramatic exaggeration of anxiety,' '[t]he ALJ was entitled to draw conclusions about [Jones's] credibility based on [Dr. Erby's observation] indicating that [Jones] was exaggerating symptoms . . .'") (quoting *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006)). In *Stephens*, the ALJ correctly supported his determination that the claimant's testimony was not credible in part because of the claimant's "history of exaggerating physical impairments." *Stephens*, 46 F.3d at 39. While PA Rusch readily admits that he is not "an expert in mental health," he opines that Gann "seems to want to exaggerate her impairments." Tr. 293.

Distinct from the unsupported report in *Short*, PA Rusch's report includes supportive examples regarding Gann's attempt to exaggerate her mental and physical symptoms and PA Rusch's rationale for believing Gann is exaggerating her symptoms. Tr. 293. To cite a few examples, in regards to Gann's physical health, Gann claimed to have carpal tunnel syndrome to PA Rusch. Yet, Gann denied any problems handling objects, which is a most comment complaint of patients suffering from carpal tunnel syndrome. Tr. 293. Also, according to PA Rusch, Gann's "ranges of motion are fairly normal, her strength is normal and her gait is normal." Tr. 293. In regards to Gann's mental health, PA Rusch explained that Gann seemed to have "studied" for her evaluation as she easily recited "mental health diagnoses and medication lists without error or notes." Tr. 293. Even assuming, *arguendo*, that PA Rusch's expressed concerns

regarding the validity of Gann's mental impairments should not have been considered by the ALJ, I am not persuaded that the ALJ's credibility conclusion is unsupported by the record for all of the other reasons discussed above.

## VI.    CONCLUSION

Based on my analysis, and in accordance with Judge Strand's well-crafted R&R, I affirm the ALJ's decision. I find that the ALJ's decision that Gann was not disabled since March 31, 2011, the date her application for benefits was filed, is supported by substantial evidence in the record. Although Gann's condition does cause her limitations in the type of work that she can perform, as the ALJ and Judge Strand pointed out, Gann is not disabled. Tr. 15. I find the objections filed by Gann regarding Judge Strand's R&R to be unpersuasive for the reasons provided. Accordingly, the Clerk shall enter judgment in the Commissioner's favor and against Gann.

**IT IS SO ORDERED.**

**DATED** this 18th day of March, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA